James P. KERRIGAN, Appellant,

v.

Wilhelmina K. KERRIGAN, Appellee.

No. 93–FM–120.

District of Columbia Court of Appeals.

Submitted March 16, 1994.

Decided June 20, 1994.

---

A. Slater Clarke, Chevy Chase, MD, was on the brief, for appellant.

Walter W. Johnson, Jr., Silver Spring, MD, was on the brief, for appellee.

Before FERREN, TERRY and FARRELL, Associate Judges.

TERRY, Associate Judge:

This is an appeal from a judgment awarding Mrs. Wilhelmina Kerrigan $56,000 for child support arrearages under a 1978 divorce decree. Her ex-husband, Dr. James Kerrigan, challenges this award on two grounds. First, he maintains that the trial court erred in refusing to admit into evidence a letter from Mrs. Kerrigan's counsel as proof that the parties had modified the terms of the divorce decree. We reject this argument. Dr. Kerrigan's second contention, however, has merit. He argues that the court should have considered his defense that Mrs. Kerrigan's claim was barred by laches. We agree and remand for further proceedings.

I

In February 1978 the trial court entered a judgment of absolute divorce, which merged and incorporated a prior separation agreement between Dr. and Mrs. Kerrigan. The divorce decree provided for initial payment of $2,000 per month for five months in support for the Kerrigans' daughter, followed by a reduction in payments to $1,500 per month. The effective date of the decree was March 3, 1978.

In November 1984, when their daughter reached the age of twenty-one, Dr. Kerrigan, without notice to either Mrs. Kerrigan or the court, reduced his monthly payment to $1,000 per month. Mrs. Kerrigan did not object to this reduction. In January 1993, because of advancing age and allegedly "adverse financial circumstances," Dr. Kerrigan terminated his monthly payments completely.

On August 18, 1992, almost eight years after the initial reduction in Dr. Kerrigan's support payments, Mrs. Kerrigan filed a motion asking that he be held in contempt and seeking a money judgment for accumulated arrearages. Dr. Kerrigan asserted in response that Mrs. Kerrigan had consented to a modification of the divorce decree, which he now formally requested the court to make, and that her claim for arrearages was barred by laches.

At a hearing on Mrs. Kerrigan's motion, the trial judge refused to consider any evidence of modification. He ruled that because the divorce decree was an order of the court, the parties had no power to modify it without the consent of the court, even though the separation agreement, which was merged into the divorce decree, had said that changes could be made "by agreement or a court order." After the separation agreement was incorporated and merged into the court's judgment, the court said, it "lost its character as an independent contract and instead took on a personality as a court order, enforceable by the court as an order of the court...."

> [I]f parties tried to negotiate something that was different from an agreement or contract ... that may in fact happen with fresh consideration and a new meeting of the minds.

> But, however, the parties don't have authority to do that when it is a court order.

In fact, no matter ... how much they act in good faith, if parties decide to operate contrary to the order of the court without seeking modification first, then they operate at risk of being found in contempt of court.

The court also refused to consider any testimony in support of Dr. Kerrigan's claim of laches. It ruled that because each overdue support payment had ripened into a money judgment when it became due and payable,[1] they were "not at this time or any previous time ... subject to the defense of laches."

## II

■ At the hearing below, Dr. Kerrigan sought to admit into evidence a letter written by Mrs. Kerrigan's attorney as proof of an agreement to modify the amount of his support payments. The attorney's letter allegedly assured him that if there were to be a change of circumstances, such as a change in his financial condition, he and Mrs. Kerrigan could work out a modification of the support payments without having to go to court. Dr. Kerrigan claimed that he relied on this assurance and Mrs. Kerrigan's implied consent when he did, in fact, reduce his support payments.

Dr. Kerrigan's effort to introduce the attorney's letter into evidence ignores the express terms of the separation agreement that he and Mrs. Kerrigan reached on January 11, 1978. This separation agreement, which was later merged into the divorce decree, contained the following language:

The parties have incorporated in this Agreement their entire understanding. No oral statements or prior written matter extrinsic to this Agreement shall have any force or effect.... *All prior agreements between the parties, whether written or oral, are hereby revoked and held for naught.* [Emphasis added.]

The letter that Dr. Kerrigan sought to offer into evidence is dated September 28, 1977— more than three months before the date of the separation agreement. By the very terms of that agreement, the letter from the attorney can have no effect on the agreement or the divorce decree into which it was merged. It must be, in the parties' own words, "held for naught." We therefore hold that the trial court did not err in refusing to admit the letter into evidence, and we need not even address the separate question of whether the parties had the power to modify the divorce decree without the consent of the court.

## III

■ "Laches is a valid defense in equity when the court finds an undue and unexplained delay on the part of one party which works an injustice to the other party." *Amidon v. Amidon,* 280 A.2d 82, 84 (D.C.1971). One factor to be considered by the court in determining whether laches is applicable in a given case is whether "the defendant may have changed [his] position in a manner that would not have occurred but for plaintiff's delay." *Gull Airborne Instruments, Inc. v. Weinberger,* 224 U.S.App.D.C. 272, 278, 694 F.2d 838, 844 (1982). We have also held that "[w]hether the facts, taken together, are sufficient to sustain the defense of laches ... is a question of law which [this] court will review without need for deference to the trial court's judgment." *American University Park Citizens Ass'n v. Burka,* 400 A.2d 737, 741 (D.C.1979) (citations omitted).

■ The facts of this case are very similar to those presented in *Padgett v. Padgett,* 472 A.2d 849 (D.C.1984), which we find dispositive here.[2] In 1973 Mr. Padgett unilaterally stopped making support payments under a

---

1. *See Jasper v. Carter,* 451 A.2d 46, 47–48 (D.C. 1982); *Brandt v. Brandt,* 107 U.S.App.D.C. 242, 244, 276 F.2d 488, 490 (1960); *Kephart v. Kephart,* 89 U.S.App.D.C. 373, 380–381, 193 F.2d 677, 684 (1951) (en banc), *cert. denied,* 342 U.S. 944, 72 S.Ct. 557, 96 L.Ed. 702 (1952).

2. We note that the *Padgett* case was, surprisingly, not cited by either party in the trial court.

1964 divorce decree. After waiting nine years, Mrs. Padgett in 1982 sought a writ of attachment against Mr. Padgett for the arrearages. The trial court quashed the writ on the ground that Mrs. Padgett's claim was barred by laches. She appealed, arguing *inter alia* that the twelve-year statutory life of a court judgment, *see* D.C.Code § 15–101 (1989), made her claim under the divorce decree immune to a defense of laches. This court disagreed, holding that "laches was a viable defense." 472 A.2d at 852 (citing *Brandt v. Brandt, supra* note 1).[3] We therefore affirmed the trial court's allowance of the defense, remanding only for consideration of a particular factor which the court had failed to take into account.

*Padgett* requires that Dr. Kerrigan's laches defense be considered by the trial court. We are satisfied that Dr. Kerrigan has made a *prima facie* showing sufficient "to establish that injustice would result" if Mrs. Kerrigan's motion were granted. *Jasper v. Carter, supra* note 1, 451 A.2d at 48. Without explanation, Mrs. Kerrigan allowed almost eight years to pass before taking any action whatever to contest Dr. Kerrigan's reduction in his support payments. Dr. Kerrigan asserts that he changed his financial position significantly in reliance upon the consent to modification implied in his ex-wife's silence. He also alleges that he made medical and educational payments on behalf of his daughter and paid approximately $18,000 for her wedding, which he would not have done without a reduction in the monthly payments. In addition, he claims that his age (seventy-one) and his current financial difficulties should also be weighed in the balance. We agree, and *Padgett* dictates, that all of these factors must be taken into account as part of his laches defense. This does not mean, of course, that Dr. Kerrigan's defense of laches has been conclusively established. We hold only (1) that laches is an available defense to Mrs. Kerrigan's claim, contrary to the ruling of the trial court, and (2) that Dr. Kerrigan

has made a *prima facie* showing of laches, and that the burden now shifts to Mrs. Kerrigan to present evidence to rebut it.

## IV

We affirm the trial court's refusal to admit into evidence the letter from Mrs. Kerrigan's attorney. We hold, however, that the trial court erred in rejecting out of hand Dr. Kerrigan's defense of laches. We remand this case so that the trial court may consider the laches claim and thereafter rule *de novo* on Mrs. Kerrigan's request for relief.

*Affirmed in part, reversed in part, and remanded for further proceedings.*

---

**3.** The court held in *Brandt* that "while each [support payment] as it comes due becomes a judgment, the defense of laches ... may partially

or wholly prevent its enforcement." 107 U.S.App.D.C. at 244, 276 F.2d at 490 (footnote omitted).