**Electronically Filed
Supreme Court
SCWC-12-0000060
28-JUN-2016
10:04 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

KARYN EILEEN HERRMANN, Petitioner/Plaintiff-Appellee,

vs.

KENNETH ROSS HERRMANN, Respondent/Defendant-Appellant.

SCWC-12-0000060

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-12-0000060; FC-D NO. 95-0-0475)

JUNE 28, 2016

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON JJ.

OPINION OF THE COURT BY POLLACK, J.

## I.    Introduction

This case involves child support and education expenses for the two children of Karyn Eileen Herrmann (Wife) and Kenneth Ross Herrmann (Husband): Son, born July 1, 1987, and Daughter, born June 16, 1991.  The dispute revolves around the correct interpretation of the divorce decree and a subsequent amendment to that decree, which govern Husband's child support obligations to Son and Daughter.  The issue presented is whether

Husband overpaid child support per the terms of the divorce decree and the amendment and, if so, whether Husband should be allowed recovery of his overpayments.

## II. Background

### A. 1998 Divorce Decree

On February 11, 1998, Husband and Wife were divorced by decree in the family court. The terms of the February 11, 1998 divorce decree (1998 Decree) included custody arrangements for Son and Daughter and terms of child support obligations for each child. Specifically, pursuant to Paragraph 4 of the 1998 Decree, the parties were each awarded joint legal custody and shared physical custody of Son and Daughter.[1]

The 1998 Decree, in Paragraph 5, provided that Husband was to pay child support payments to Wife in the amount of $1,600 per month for each child and that payments for each child were to continue until the child "attains the age of 18 years or graduates from or discontinues high school, whichever occurs last." The Decree further stated that "[t]he issue of child support thereafter, if any, including the amount, duration, manner of payment, payor, and payee, shall be reserved for future agreement by the parties or future determination by the

---

[1] Husband subsequently moved to Indiana on October 1, 2003, after which, as discussed infra, Husband filed a motion for sole custody of Son.

2

Court, if necessary." Pursuant to Paragraph 5, Husband was to make his child support payments through the Child Support Enforcement Agency (CSEA).

### B. Husband's Motion for Post-Decree Relief

Husband filed a Motion and Affidavit for Post-Decree Relief (2003 Motion) seeking sole custody of Son. Thereafter, Wife made a settlement offer in an effort to resolve Husband's 2003 Motion. Wife's settlement offer proposed that, inter alia, Husband would have sole custody of Son beginning with Son's upcoming school break and that child support would then be recalculated. Husband subsequently accepted Wife's settlement offer, but Husband indicated that he wanted to "work together to draft a revision" of the terms. Wife filed a notice of acceptance of the settlement offer on December 1, 2003, and Son began living with Husband on December 18, 2003.

Although Husband and Wife initially agreed on proposed substantive changes to the 1998 Decree, the family court returned the proposed amendments to the parties because the amendments were incomplete.[2] The parties were unable to reach agreement to incorporate the family court's required changes.

_____

[2] The family court indicated that the amendments failed to "address that the change in custody [for Son] is in the child's best interests," did not include a Child Support Guidelines Worksheet, and was not signed by an attorney for the CSEA.

3

Wife then filed a motion to compel compliance with the accepted settlement offer, which the family court granted.[3]  The family court's order granting Wife's motion to compel (August 2004 Order) also stated that "child support shall be modified effective September 5, 2004," and instructed Wife to submit a proposed order.

On September 1, 2004, the amendment to the 1998 Decree was approved and filed by the family court (September 2004 Amendment).  The September 2004 Amendment reflected that Son was now living with Husband and, thus, modified the amount of Husband's child support obligation set forth in Paragraph 5 of the 1998 Decree.  Specifically, under the September 2004 Amendment, Paragraph 5 of the 1998 Decree was "withdrawn" and a new Paragraph 5 was "substituted," which, in pertinent part, stated the following:

> 5.  [Husband] shall pay to [Wife] as and for the support and maintenance of [Daughter] the sum of [$2,630] per month commencing on the fifth day of September, 2004. . . .  [Wife] shall pay to [Husband] as and for the support and maintenance of [Son] the sum of [$50] per month commencing on the fifth day of January 2004. . . .
>
> Child support for each child shall continue until he or she attains the age of 18 years or graduates from or discontinues high school, whichever occurs last. The issue of child support thereafter, if any, including the amount[,] duration, manner or payment, payor, and

---

[3]  The Honorable Christine E. Kuriyama presided.

4

payee, shall be reserved for future agreement by the parties or future determination by the Court, if necessary.

On November 1, 2004, Husband received a letter from CSEA advising him that he had overpaid child support payments to Wife in the amount of $14,040 and that "[a]ny issues concerning the recovery of the above over payments should be handled between the custodial and non-custodial parents."[4]  Thereafter, according to Husband, he verbally asked Wife on numerous occasions to reimburse him for the overpayments, but he did not file an action with the family court.  Wife did not repay Husband's claimed overpayment, believing that she did not owe Husband any money.

Four years later, in anticipation of Daughter's high school graduation, Wife filed a Motion and Affidavit for Post-Decree Relief asking the family court for an order requiring Husband to pay Daughter's college expenses.  Husband stipulated to pay "all costs and fees for [Daughter] to attend [college] including tuition, books and student supplies, room and board and a reasonable allowance for clothing and student activities and/or additional fees" as long as Daughter was a fulltime

---

[4]     According to Husband, the amount of the overpayment calculated by CSEA in its letter was incorrect, and the correct amount is $14,400 ($1,600 a month for nine months) rather than $14,040.  Husband agreed during a hearing in the family court to seek only the amount represented in the CSEA letter, i.e., $14,040.

student in good standing.  The family court issued an order that reflected Husband's agreement to pay Daughter's college expenses.

On June 16, 2009, Daughter attained the age of eighteen years old, and in September 2009, Daughter moved to Washington State to attend college.  CSEA continued to assign Husband's wages in the amount of $2,630 a month for child support for Daughter.  Husband contacted CSEA starting in September 2009 to request that the child support payments for Daughter be terminated pursuant to the 1998 Decree and September 2004 Amendment, but Husband's efforts to terminate payments were unsuccessful.

### C. Husband's April 2011 Motion

Unable to resolve his dispute with CSEA over Daughter's child support payments, Husband filed a Motion and Affidavit for Post-Decree Relief (April 2011 Motion) in which he asked the family court to (1) retroactively terminate his child support obligation for Daughter to September 2010, when Daughter moved to Washington to begin college, and require Wife to reimburse him for the amount that he paid in child support for Daughter from September 2009 to the date the court terminates child support and (2) require Wife to reimburse him for the $14,040 he overpaid in child support for Son.

6

Wife filed an opposing memorandum responding to Husband's contentions that he was entitled to relief. Wife argued that Husband did not overpay child support for Son because the August 2004 Order became effective on September 5, 2004, and it did not apply retroactively. Wife alternatively argued that under the Hawai'i Family Court Rules (HFCR) Rule 60(b) (2006), any reasonable time for Husband to seek relief had long passed as almost 7 years had passed since these overpayments were made.[5] Wife contended that Husband's April 2011 Motion included no explanation of why he waited to bring his action for reimbursement of overpaid child support.

Next, in regards to Daughter's support, Wife argued that the family court should not retroactively order reimbursement of support paid prior to the April 2011 Motion. Wife maintained that the 1998 Decree and the September 2004 Amendment reserved the issue of Daughter's child support payments beyond her eighteenth birthday, and Wife argued that it was appropriate for Husband to continue to pay child support for

---

[5]    Pursuant to HFCR Rule 60(b), a motion to be relieved "from any or all of the provisions of a final judgment, order, or proceeding" because of mistakes, inadvertence, excusable neglect, newly discovered evidence, or fraud "shall be made within a reasonable time." If the motion is based upon mistake, inadvertence, surprise, excusable neglect, newly discovered evidence, or fraud, the motion must be made "not more than one year after the judgment, order, or proceedings was entered or taken." HFCR Rule 60(b).

Daughter because Wife had been providing support for Daughter while she attended college. In addition, Wife argued that granting Husband's requested relief would be a "horrendous financial problem" for her. Finally, Wife maintained that, pursuant to HRS § 580-47(a) (2007), the family "court has the ability to provide for the payment of child support for a child who is continuing his/her education even if the matter is raised subsequent to the time when the child becomes an adult." In conclusion, Wife argued that there was no legal basis for Husband's motion and that the child support payments were both reasonable and justified. Accordingly, Wife asked the family court to deny Husband's April 2011 Motion.

In his reply, Husband first responded to the overpayment of child support for Son, arguing that despite the language in the family court's August 2004 Order stating that child support was modified effective September 2004, the subsequent September 2004 Amendment mandated a different result. Specifically, Husband argued that the September 2004 Amendment replaced provisions of the 1998 Decree and required Wife to commence paying child support for Son in January 2004, not September 2004. Husband contended that this modification was consistent with the fact that Son had starting living with Husband in December 2003. Husband argued that the September

2004 Amendment, which was approved by the court and made an order of the court, superseded any contrary statement in the family court's August 2004 Order.  Accordingly, Husband argued that the CSEA correctly determined that there had been an overpayment of child support based on the September 2004 Amendment in the amount of $14,040.

Next, Husband argued that under the terms of the 1998 Decree and September 2004 Amendment, his child support obligation to Daughter ended after June 2009 when she "attained the age of 18 years (and had already graduated from high school)."  Husband argued that because there was no agreement by the parties or a determination by the Court that child support would continue, child support payments incorrectly were assigned to Wife by CSEA.  Consequently, Husband argued that Wife should be ordered to pay back Husband's overpayment of child support for Daughter from September 2009, when Daughter moved to college, to the time of the order terminating Husband's child support obligation.

Finally, Husband argued that he should not be required to continue to pay child support for Daughter.  Husband asserted that because he was paying all of Daughter's college education expenses and because Daughter was not living with Wife in Honolulu, there was no basis for Wife to continue receiving

9

$2,630.00 a month in child support. Accordingly, Husband asked the family court to terminate his child support obligation for Daughter retroactively to September 2009, when Daughter moved from Wife's home to attend college.

At the hearing on Husband's April 2011 Motion, Husband and Wife each adopted as their direct testimony offers of proof made by their respective attorneys, after which each was cross-examined by opposing counsel.[6] Husband explained that he had been paying all of Daughter's college, living, and healthcare expenses since she left for college in September 2009 and that Daughter had never asked him for more monies or claimed that she did not have sufficient funds for all of her living expenses. Husband additionally testified that although Son had begun living with him in December 2003 and that the parties had agreed that child support for Son would stop as of January 2004, he continued to pay child support for Son through August 2004. Thus, Husband testified that he overpaid child support for Son for nine months.

Wife testified that Husband's child support obligation for Son was to continue through September 5, 2004, and that she did not believe she owed Husband any amount of reimbursement.

---

[6] The Honorable Paul T. Murakami presided.

10

Wife stated that she spends more in support of Daughter than she receives from Husband on a monthly basis, including transportation and keeping the home for Daughter, and that such funds are necessary in order to maintain her relationship with Daughter.  Wife further explained that she had been experiencing physical challenges impeding her ability to work, she was receiving unemployment compensation because she had not been employed full time, her net income was low, and the variance between her financial situation and that of Husband's made it inequitable for her to be required to repay Husband's alleged child support overpayments.  Finally, Wife testified that Husband's attempt to try and recoup this alleged amount was not timely or appropriate.

### D. Decision and Order of the Family Court

After the hearing on the April 2011 Motion, the family court issued its "Decision Re: Hearing on Order to Show Cause Filed 04/13/2011" (Decision) and "Order Denying Defendant's Motion and Affidavit for Post-Decree Relief Filed 04-13-2011" (Order).  The family court, in ruling against Husband, declined to reimburse Husband for claimed child support overpayments and determined that Daughter's child support payments were to continue.  In its subsequently issued Findings of Fact and Conclusions of Law, the family court found that the overpayment

11

of child support for Son was "a result of the delay in the entry of the [September 2004 Amendment] caused by disagreements between the parties as to the form and content of the document," during which time the amount due under the 1998 Decree "continued to be garnished from [Husband's] income." The court noted that "Husband waited for approximately 7 years before raising the issue of his claimed overpayment of child support." Thus, the family court concluded that, "given the passage of time and opportunities to have previously raised" the overpayment of child support for Son, Husband "is now estopped from pursuing said claim."[7]

The family court then considered Daughter's child support. The court found that Husband paid Daughter's college expenses and that such payments were separate from child support payments due under the 1998 Decree and September 2004 Amendment. The court further found that Wife had sent additional sums of money to Daughter after she moved to attend college. The court determined that the funds received by Wife from Husband are used

---

[7] It is not clear what the family court meant by "estopped." Estoppel was not raised by either of the parties in the family court, and the court did not explain whether it was referring to equitable estoppel, quasi-estoppel, the doctrine of laches, or another legal principle altogether. Wife had specifically predicated her objection to Husband's April 2011 Motion on HFCR Rule 60(b) and a statute of limitations challenge, neither of which the family court ruled upon.

12

by Wife to pay for expenses related to and necessary for Daughter's support and maintenance.  In addition, the court stated that Husband could have challenged the ongoing payment of Daughter's child support during litigation between Husband and Wife from 2009 through 2011, but instead Husband waited 24 months after "the triggering event" of Daughter leaving for college to contest ongoing child support payments.  Based on these findings, the court concluded that it "would be inequitable to require [Wife] to reimburse for child support payments made with regard to [Daughter] for the period commencing in September of 2009."  The court further concluded that "[b]ased upon the credible evidence, [Husband] is not entitled to an order terminating his child support obligation to [Daughter]," and "[c]hild support for [Daughter] shall remain in effect until such time as [Daughter] graduates from college or reaches the age of 23, whichever comes first."

### III.    ICA Proceedings

Husband timely appealed from the Decision and Order. In their briefs submitted to the ICA, Husband and Wife presented arguments that paralleled those that were made to the family court.  Because the basis upon which the family court concluded that Husband was estopped from pursuing his claim is unclear, Husband asserted on appeal that the family court meant quasi-

13

estoppel when it ruled in favor of Wife. To the contrary, Wife contended that the family court was actually referring to laches in its decision.

The ICA issued its memorandum opinion (Opinion) on February 17, 2015. As a general matter, the ICA concluded that, under Hawai'i Revised Statutes (HRS) § 571-52.2(d) (2006), which governs child support payments collected through salary assignments, the individual receiving child support has the "primary" responsibility for terminating a salary assignment and that reimbursement is permitted in the event of overpayment of child support. The ICA next determined that the September 2004 Amendment provided that, effective as of January 2004, Husband was no longer required to pay $1,600 per month as child support for Son and that Wife had to pay Husband $50 monthly toward Son's child support.

The ICA noted that the family court denied Husband's claim for reimbursement of overpayment for Son's support on the sole ground that Husband, by waiting too long before contesting his alleged overpayments, was estoped from doing so. The ICA remarked that the family court was not clear as to the legal theory upon which it predicated its conclusion regarding estoppel. Hence, the ICA adopted Wife's position and presumed that the family court based its Decision and Order on the

14

doctrine of estoppel by laches--an equitable doctrine by which courts deny relief to a claimant who has unreasonably delayed or been negligent in asserting a claim. Citing Adair v. Hustace, 64 Haw. 314, 321, 640 P.2d 294, 300 (1982), the ICA held that estoppel by laches has two required elements: first, "a delay by the plaintiff in bringing his claim" and the "delay must have been unreasonable under the circumstances"; and, second, the "delay must have resulted in prejudice to defendant." Id.

Applying the elements of estoppel by laches in this case, the ICA noted that Husband's delay in filing the April 2011 Motion is considerable, given that he waited over six years after CSEA notified him of the overpayment before taking action. However, the ICA also determined that Wife did not claim, nor did the family court make an independent conclusion, that Wife was prejudiced by the delay. Accordingly, the ICA concluded that "both elements of laches are not present," the family court "failed to apply the applicable law," and, by doing so, "abused its discretion" in concluding that Husband was precluded from seeking reimbursement for his overpayment of child support for Son.

The ICA also addressed Husband's argument that he overpaid child support for Daughter and that his obligation to pay child support for Daughter automatically terminated per the

15

terms of the 1998 Decree and September 2004 Amendment. Construing Paragraph 5 of the September 2004 Amendment, the ICA concluded that its "plain language [] terminated child support for both children upon the attainment of age 18 or graduation from high school, whichever was later."  As to Daughter, the ICA found that both of these conditions were satisfied by June 2009. Accordingly, the ICA concluded that, pursuant to the 2004 Amendment, Husband's obligation to pay child support for Daughter should have terminated in June 2009.  The ICA, however, did not address Wife's argument on appeal that "HRS 580-47(a) took precedence over a provision in a divorce decree that said that [Husband's] obligation to provide support terminated at 18" and that the family court did not therefore err when it held, on Wife's motion, that "it was appropriate and necessary that support should continue for [Daughter] past the age of 18 and graduation from high school."

Having concluded that Husband's obligation to pay child support for Daughter ended in June 2009, the ICA then addressed whether and in what amount Husband should be reimbursed for his overpayment.  The ICA noted that Husband's agreement and obligation, separate from the issue of child support, to pay Daughter's college expenses complicated the issue of reimbursement for three reasons.  First, the ICA found

that the record does not show whether "the amount of support Daughter was entitled to while she attended college was ever calculated using the appropriate Child Support Guidelines as required by HRS § 580-47." Second, the ICA also found that Husband may have paid for items that would be considered a component of child support as part of the payments he made for Daughter's college expenses; thus, there may have been duplicative payment for some items. The final complicating factor that the ICA noted was Wife's contribution to Daughter's college expenses and the amount Wife spent in order to allow Daughter to return to Hawai'i during semester breaks, some monies for which were drawn from Husband's child support payments for Daughter. Consequently, the ICA reasoned that determining if and how much Husband overpaid in support for Daughter depends on "a determination of what amount was necessary to meet Daughter's needs while in college," as Husband was required to pay those expenses. Thus, the ICA concluded that the family court, on remand, must "determine whether offsets against the overpaid child support [for Daughter] might be appropriate." Notably, the ICA did not address the family court's finding--challenged by Husband on appeal--that it would be inequitable to allow Husband to recover overpayments of child support paid for Daughter since Husband waited two years before filing the April

17

2011 Motion and did not take advantage of several opportunities to raise the issue of overpayments.

Based on the foregoing, the ICA vacated the Decision and Order of the family court and remanded the case to the family court for further proceedings.

### IV. Application for Writ of Certiorari

In her Application, Wife challenges the ICA's holding that HRS § 571-52.2(d) applies in this case and that Wife had the primary responsibility to terminate Husband's salary assignment. Wife also asserts that the ICA erred in holding that Husband's delay in filing his April 2011 Motion did not estop Husband from recovering child support overpayments made to Wife for Son. Further, Wife contends that the ICA erroneously held that Husband's child support obligations to Son ended in January 2004 because the September 2004 Amendment did not take effect until September 2004. Wife also argues that the ICA erred in holding that Husband's child support obligations to Daughter automatically terminated when she reached the age of 18. Relatedly, Wife maintains that it would be inequitable to permit Husband to recoup overpaid child support for Daughter because he waited approximately two years before raising his claim.

## V.    Standards of Review

When the relief granted by the family court is equitable in nature and discretionary, it "will not be overturned on review unless the . . . court abused its discretion by issuing a decision that clearly exceeds the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of the appellant."  Aickin v. Ocean View Invs. Co., 84 Hawai'i 447, 453, 935 P.2d 992, 998 (1997) (quoting AIG Haw. Ins. Co. v. Bateman, 82 Hawai'i 453, 457, 923 P.2d 395, 398 (1996)).

The family court's findings of facts are reviewed on appeal under the clearly erroneous standard.  In re Doe, 95 Hawai'i 183, 190, 20 P.3d 616, 623 (2001).  A finding of fact "is clearly erroneous when (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is nonetheless left with a definite and firm conviction that a mistake has been made."  Id. (quoting State v. Okumura, 78 Hawai'i 383, 392, 894 P.2d 80, 89 (1995)).  "Substantial evidence is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion."  Id. (alteration omitted) (quoting State v. Doe, 84 Hawai'i 41, 46, 928 P.2d 883, 888 (1996)).

19

"The interpretation or construction of a judgment, decree, or order 'presents a question of law,'" State v. Guyton, 135 Hawai'i 372, 377, 351 P.3d 1138, 1143 (2015) (quoting Cain v. Cain, 59 Haw. 32, 39, 575 P.2d 468, 474 (1978)), and is "reviewable de novo under the right/wrong standard of review," Bank of Haw. v. DeYoung, 92 Hawai'i 347, 351, 992 P.2d 42, 46 (2000) (quoting Ditto v. McCurdy, 90 Hawai'i 345, 351, 978 P.2d 783, 789 (1999)).

## VI.     Discussion

### A. Overpayment of Child Support for Son

### 1.   Husband's Child Support Obligation to Son Terminated in January 2004

The September 2004 Amendment modified the respective parties' child support obligations.  The 1998 Decree, in Paragraph 5, provided that Husband was to make child support payments to Wife in the amount of $1,600 per child per month, for a total of $3,200 per month.  The 2004 Amendment substituted Paragraph 5 of the 1998 Decree with the following:

> 5.    [Husband] shall pay to [Wife] as and for the support and maintenance of [Daughter] the sum of [$2,630] per month commencing on the fifth day of September, 2004. . . . [Wife] shall pay to [Husband] as and for the support and maintenance of [Son] the sum of [$50] per month commencing on the fifth day of January 2004.

The ICA held that, based on the above language, Husband, "as of January 2004, would no longer pay [Wife] child support for Son."

20

Wife's argument is that Husband's obligation to continue paying $1,600 for Son's child support did not end until September 2004, when the amendment was approved and adopted by the family court. However, this is not a reasonable construction of the terms of the September 2004 Amendment relating to child support. See Cain v. Cain, 59 Haw. 32, 39, 575 P.2d 468, 474 (1978) (stating that court orders and decrees must "be construed reasonably" (citing Smith v. Smith, 56 Haw. 295, 301, 535 P.2d 1109, 1114 (1974))).

Prior to the September 2004 Amendment, under the 1998 Decree, Wife was not required to pay any child support to Husband. Son began living with Husband in December 2003. The plain language of Paragraph 5 of the September 2004 Amendment states that Wife must pay Husband $50 per month for Son's child support starting on January 5, 2004. State v. Guyton, 135 Hawai'i 372, 378, 351 P.3d 1138, 1144 (2015) (reasoning that plain language governs if the decree is unambiguous). It would be incongruous to conclude that Husband was still required to pay Wife child support for Son at the same time that Wife was mandated to pay Husband for Son's support. If Wife's position were adopted, it would mean that Wife and Husband were concurrently

21

obligated to pay each other child support for Son from January to September 2004, a conclusion that would not be logical given that Son started living with Husband in January 2004. The most reasonable reading of the September 2004 Amendment, therefore, is that at the point in which Wife was required to pay Son's child support in January 2004, Husband's child support obligations for Son terminated.[8]

The August 2004 Order, which stated that "child support shall be modified effective September 5, 2004," is also consistent with the conclusion that Husband's child support obligations to Son terminated in January 2004. The August 2004 Order is not controlling as to the issue of child support modification, for the subject matter of that order only compelled Husband to comply with Wife's settlement offer and awarded Wife costs and fees; it did not directly modify the parties' child support obligations under the 1998 Decree. As such, the August 2004 Order's statement that "child support shall be modified effective

---

[8] The first sentence of Paragraph 5 of the September 2004 Amendment is not contrary to this conclusion. The fact that Husband was obligated to pay $2,630 per month as child support for Daughter beginning in September 2004 means only that, from January 2004 to September 2004, Husband's child support for Daughter remained at $1,600 monthly based on the 1998 Decree.

September 5, 2004," is reasonably construed as merely setting a prospective date at which the actual modification was to be effectuated.[9]  Accordingly, the ICA did not err in holding that the September 2004 Amendment terminated Husband's child support obligations to Son as of January 2004.

## 2. The Issue of Whether Laches Applies Requires Remand to the Family Court

Estoppel by laches is an equitable doctrine with two components that must be satisfied in order to become applicable:

> First, there must have been a delay by the plaintiff in bringing his claim, and that delay must have been unreasonable under the circumstances.  Delay is reasonable if the claim was brought without undue delay after plaintiff knew of the wrong or knew of facts and circumstances sufficient to impute such knowledge to him.  Second, that delay must have resulted in prejudice to defendant.

Adair v. Hustace, 64 Haw. 314, 321, 640 P.2d 294, 300 (1982) (citations omitted) (emphases added); accord Ass'n of Apartment Owners of Newtown Meadows ex rel. its Bd. of Dirs. v. Venture 15, Inc., 115 Hawai‘i 232, 284, 167 P.3d 225, 277 (2007).  Thus,

---

[9]  Even assuming that the August 2004 Order directly modified the parties' child support obligations under the 1998 Decree, the September 2004 Amendment, which was subsequently filed and entered, superseded any conflicting terms of the August 2004 Order.  See Okazaki v. Okazaki, 38 Haw. 148, 151 (1948) (holding that all orders inconsistent with a final decree are superseded); Quanaim v. Frasco Rest. & Catering, 17 S.W.3d 30, 40 (Tex. App. 2000) (holding that a subsequent order granting summary judgment modifies, corrects, or reforms a previous summary judgment order in favor of the same party).

as to the first requirement of unreasonable delay, a court considers whether, under the circumstances, the delay in bringing the claim was unreasonable.  Adair, 64 Haw. at 321, 640 P.2d at 300.  As to the second requirement of prejudice to the opposing party, a court may consider, for example, "loss of evidence with which to contest plaintiff's claims, including the fading memories or deaths of material witnesses, changes in the value of the subject matter, changes in defendant's position, and intervening rights of third parties."  Id.

       The ICA, in presuming that the family court applied the doctrine of laches to estop Husband's claim for reimbursement, held that the "Family Court failed to apply the applicable law [on laches] and thereby abused its discretion in ruling [that Husband] was prevented from being reimbursed for his overpayments of support for Son."  The ICA determined that neither requirement of laches was present and that the family court abused its discretion in holding otherwise.  However, while the family court did not expressly find "unreasonable delay," it did so inferentially when it concluded that Husband was estopped from pursuing reimbursement for claimed overpayment of child support for Son "[b]ecause [Husband] waited for approximately 7 years before raising the issue . . . and did not avail himself of opportunities to raise the issue when the

24

parties were before the court on other matters relating to the children."

The underlying factual findings of the court were correct because Husband had been aware of his claim against Wife since at least the time he received the letter from CSEA on November 1, 2004, advising him that he had overpaid child support to Wife in the amount of $14,040, but Husband waited until April 13, 2011, to move for reimbursement against Wife. As noted by the family court, Husband did not proffer a satisfactory excuse for the almost seven-year delay, see In re Kawai, 36 Haw. 533, 536 (1943) (holding that the party who waits for an unreasonably protracted period before commencing an action must provide a "satisfactory excuse"), despite having several opportunities to raise this issue to the family court during the intervening years.[10]  See Brown v. Bishop Trust Co., 44 Haw. 385, 394—400, 355 P.2d 179, 185-186 (1960) (concluding that the plaintiffs were barred by laches from commencing an action because they waited more than 18 years after they were apprised of "enough facts . . . to put them upon inquiry" of their claim against the defendant).  Since the family court

_____

[10]    For example, Husband could have raised the issue of reimbursement when Wife moved, on November 14, 2008, for post-decree relief asking the family court to order Husband to pay Daughter's college expenses.

concluded that Husband was estopped from seeking reimbursement, the family court, based on its factual findings, implicitly concluded that Husband's delay in moving for reimbursement for Son's support payments was unreasonable. See Hayashi v. Hayashi, 4 Haw. App. 286, 293, 666 P.2d 171, 176 (1983) (noting that the family court did not specifically hold that the claim was barred by laches, but reasoning that the family court's "finding was in fact equivalent to a determination that laches was a bar").

As to prejudice, the second element of laches, the ICA reasoned that "[Wife] did not claim and the [f]amily court did not find that [Wife] was prejudiced by the delay." This ruling is not supported by the record. What qualifies as prejudice for purposes of the laches doctrine invariably depends on the facts and circumstances of a particular case, but it is ordinarily understood as anything that places the defendant "in a less favorable position." See 27A Am. Jur. 2d Equity § 143 (2008).

However, "the mere prospect that a defendant might lose a case does not suffice to warrant the imposition of laches as a barrier to a plaintiff's action," since "that sort of prejudice could be claimed by all defendants all of the time." Wauchope v. U.S. Dep't of State, 985 F.2d 1407, 1412 (9th Cir. 1993) (quoting TransWorld Airlines, Inc. v. Am. Coupon Exch.,

Inc., 913 F.2d 676, 696 (9th Cir. 1990)). Prejudice must be established by adducing evidence, and conclusory allegations of harm would not suffice. Ass'n of Apartment Owners of Newtown Meadows ex rel. its Bd. of Dirs., 115 Hawai'i at 284, 167 P.3d at 277.

In determining whether prejudice exists in child support disputes, "[o]ne factor to be considered by the court . . . is whether 'the defendant may have changed [his or her] position in a manner that would not have occurred but for plaintiff's delay.'" Kerrigan v. Kerrigan, 642 A.2d 1324, 1326 (D.C. 1994) (quoting Gull Airborne Instruments, Inc. v. Weinberger, 694 F.2d 838, 844 (D.C. Cir. 1982)). In Kerrigan, the husband unilaterally reduced his child support payments when the child turned 21 years old. Id. The wife, without any explanation, waited almost eight years before taking action to challenge the husband's reduction in his support payments. Id. at 1327. In defense, the husband contended that the wife was barred by laches from claiming arrearages in child support because (1) "he changed his financial position significantly in reliance upon the consent to modification implied" by the wife's extended silence; (2) "he made medical and educational payments on behalf of his daughter and paid approximately $18,000 for her wedding, which he would not have done without a reduction in the

27

monthly payments"; and (3) his advanced age and current financial difficulties should be factored in the balance of equities. Id. The District of Columbia Court of Appeals agreed with the husband that laches was an available defense, that these "factors must be taken into account as part of [the husband's] laches defense," and that the husband had established "a prima facie showing of laches," thereby shifting the burden to the wife to rebut it. Id.

Here, Wife argued in her opposition papers that granting Husband's requested relief would be a "horrendous financial problem" for her. In addition, in her testimony during the hearing in the family court, Wife related that "she has real challenges as far as her work," "her net after all" of the expenses associated with her work in the summer as a scuba diving instructor "is really quite small," her work as a yoga instructor had not been "a source of significant income," she had been experiencing physical challenges impeding her ability to work, she was receiving unemployment compensation because she had not been employed full time, and "it would be inequitable to force her to pay" what Husband alleges is owed to him "given her financial situation as well as the huge disparity that exists between her situation and [Husband's] situation." We agree with the D.C. Court of Appeals in Kerrigan that the current personal

28

and financial circumstances of the defendant (here, the Wife) and the economic prejudice resulting from the plaintiff's delay are relevant factors in determining whether laches bars the plaintiff's claim.  Kerrigan, 642 A.2d at 1327 (indicating that the husband's age and "current financial difficulties should also be weighed in the balance" as part of the laches analysis).  Hence, it was error for the ICA to find that Wife "did not claim" prejudice from Husband's delay.

On the other hand, because the family court did not address or make any findings of fact relating to the prejudice prong, which includes economic harm to Wife resulting from Husband's delay in asserting his claim, the ICA's statement that "the [f]amily court did not find that [Wife] was prejudiced by the delay" is not inaccurate.  There appear to be three possibilities that could explain the absence of a specific finding by the family court as to prejudice.  First, the family court may not have been applying the laches doctrine.  Second, assuming that the family court applied the laches doctrine, the court implicitly found that the prejudice prong had been satisfied.  Third, the family court failed to recognize that prejudice was a required prong for the application of laches and, consequently, did not make any finding as to prejudice.

29

In any event, the basis for the family court's silence on whether the prejudice prong was satisfied is uncertain. Consequently, the family court's conclusion that Husband is estopped from pursuing reimbursement is not supported, under a laches analysis, by findings of fact as to the presence or degree of prejudice to Wife resulting from Husband's delay. Thus, the issue as to whether laches barred Husband from claiming reimbursement from Wife for his overpayment of Son's child support must be remanded to permit the family court to consider whether Wife was prejudiced by Husband's unreasonable delay and to render factual findings with respect to the prejudice prong of laches. See Gussin v. Gussin, 73 Haw. 470, 836 P.2d 484 (1992) (holding that the ICA erred in not remanding the case to the family court for further fact finding where the family court did not make any findings as to donative intent or any other element bearing on whether a legal gift had been made). Alternatively, if the family court was applying another legal doctrine, the court's findings and conclusions should so clarify. See id. As noted, the family court may have been applying a different legal doctrine or rule in concluding that Husband was "estopped from pursuing [his] claim." But because the family court did not specify the legal theory upon which its conclusions were based, it is unclear whether the court's denial

of Husband's April 2011 Motion was based on equitable estoppel, estoppel by laches, quasi-estoppel, HFCR Rule 60(b), or another legal principle altogether.[11]

The ICA therefore erred by concluding that "both elements of laches are not present" and that Husband was not estopped from pursuing reimbursement for overpayment of Son's child support, rather than remanding this issue to the family court for further consideration.[12]

**B. Termination and Overpayment of Child Support for Daughter**

The family court denied Husband's request to retroactively terminate Daughter's child support to September 2009, when Daughter commenced her college education. In

---

[11] Equitable estoppel is a defense requiring "proof that one person wilfully caused another person to erroneously believe a certain state of things, and that person reasonably relied on this erroneous belief to his or her detriment." Maria v. Freitas, 73 Haw. 266, 273, 832 P.2d 259, 264 (1992). Quasi-estoppel, on the other hand, is a species of equitable estoppel precluding one "from asserting to another's disadvantage, a right inconsistent with a position previously taken by him" or her. Id. at 274, 832 P.2d at 264 (quoting Aehegma v. Aehegma, 8 Haw. App. 215, 234, 797 P.2d 74, 80 (1990)).

[12] As an additional basis for its decision that Husband should be reimbursed for his child support overpayments for Son, the ICA held that HRS § 557-52.5(d) applies in this case and that Wife had primary responsibility for terminating the assignment of Husband's income for child support. However, the ICA's reference to HRS § 571-52.2(d) does not affect its conclusion as to Husband's overpayment of Son's child support and was not dispositive of its holding. And even though the ICA discussed the applicability of HRS § 571-52.2(d) and Wife's responsibility under this statute, the ICA's ultimate holding as to Husband's overpayment of Son's child support was based on its finding that the family court erred in applying the doctrine of estoppel by laches. As such, it is unclear why the ICA discussed the application of HRS § 571-52.2(d).

addition, the family court declined to "halt the child support previously ordered until such a time that [Daughter] graduates or attains the age of 23, whichever comes first."

The September 2004 Amendment relating to child support provides as follows:

> Child support for each child shall continue until he or she attains the age of 18 years or graduates from or discontinues high school, whichever occurs last. The issue of child support thereafter, if any, including the amount, duration, manner of payment, payor, and payee, shall be reserved for future agreement by the parties or future determination by the Court, if necessary.

(Emphases added).

Where the language of the decree is clear and unambiguous on its face, there is no room for interpretation and its plain language must control. Guyton, 135 Hawai'i at 378, 351 P.3d at 1144; see Kawamata Farms, Inc. v. United Agri Prods., 86 Hawai'i 214, 259, 948 P.2d 1055, 1100 (1997) (according "plain meaning" to this court's remand order in construing its scope).

The language of the child support provision is clear and unambiguous. The conjunction "until" means "up to the time that" or "up to such time as."[13] Because "[c]hild support for

---

[13] Merriam-Webster, http://www.merriam-webster.com/dictionary/until (last visited May 18, 2016). A court may consult well-accepted dictionaries in determining the meaning of words. In re Taxes, Hawaiian Pineapple Co., Ltd., 45 Haw. 167, 188, 363 P.2d 990, 1001 (1961); Leslie v. Bd. of Appeals of Cty. of Haw., 109 Hawai'i 384, 393, 126 P.3d 1071, 1080 (2006) (using the Webster's Dictionary to find the meaning of "shall").

each child shall continue until he or she attains the age of 18 years or graduates from or discontinues high school, whichever occurs last," Husband's child support obligation continues "up to the time that" or "up to such time as" the child turns 18, graduates from high school, or discontinues high school, whichever occurs last.

The plain meaning of the first sentence of the September 2004 Amendment expressly obligates Husband to pay child support for a particular child until that child reaches the age of 18 years or graduates from or discontinues high school, whichever occurs last. Thus, when Daughter turned 18 on June 16, 2009, after graduating from high school, Husband's child support obligation under the first sentence of the September 2004 Agreement for Daughter expired. Wife's contrary argument--that "[t]here is nothing in the language of the Decree that provides that the support was to terminate on the later of the child's 18th birthday or graduation from high school"-- essentially disavows the plain meaning of the first sentence.

However, we note that under HRS § 580-47(a),[14] the family court, at the time of granting a divorce or later, if

--------

[14]     In relevant part, HRS § 580-47(a) provides as follows:

Upon granting a divorce, or thereafter if . . .
jurisdiction of those matters is reserved under the decree

(continued. . .)

jurisdiction is reserved, has the authority to compel parties to provide child support "of an adult or minor child . . . whether or not the petition is made before or after the child has attained the age of majority."  HRS § 580-47(a).  In this case, the family court reserved jurisdiction over the matter of child support in both the 1998 Divorce Decree and the September 2004 Amendment.  As such, the family court had the authority, pursuant to HRS § 580-47(a), to order Husband to continue paying child support for Daughter after Daughter attained the age of 18 years.  See Richardson v. Richardson, 8 Haw. App. 446, 449, 808 P.2d 1279, 1282 (1991) (noting that HRS § 580-47(a) "takes

---

(. . .continued)

> by agreement of both parties or by order of court after finding that good cause exists, the court may make any further orders as shall appear just and equitable (1) compelling the parties or either of them to provide for the support, maintenance, and education of the children of the parties . . . . In making these further orders, the court shall take into consideration: the respective merits of the parties, the relative abilities of the parties, the condition in which each party will be left by the divorce, the burdens imposed upon either party for the benefit of the children of the parties, the concealment of or failure to disclose income or an asset, or violation of a restraining order issued under section 580-10(a) or (b), if any, by either party, and all other circumstances of the case.  In establishing the amounts of child support, the court shall use the guidelines established under section 576D-7.  Provision may be made for the support, maintenance, and education of an adult or minor child and for the support, maintenance, and education of an incompetent adult child whether or not the petition is made before or after the child has attained the age of majority.

HRS § 580-47(a).

precedence over [the provision] terminati[ng] . . . Father's child support obligation when the children reach the age of 18"). Wife expressly argued this point in the family court and the ICA, but neither court addressed Wife's contention. Thus, on remand the family court should address whether, pursuant to its authority under HRS § 580-47(a), it was appropriate to order child support payments for Daughter after the obligation for child support expired under the first sentence of the September 2004 Amendment.[15]

Additionally, under HRS § 580-47(b) (2007), the family court "at all times . . . ha[s] the power to grant any and all orders that may be necessary to protect and provide for the support and maintenance of the parties and any children of the parties to secure justice." HRS § 580-47(b). Accordingly, the family court on remand also retains the discretionary authority provided by HRS § 580-47(b) to craft appropriate relief regarding child support.[16]

---

[15]    We note that HRS § 580-47(a) requires awards of child support to be consistent with the child support guidelines. HRS § 580-47(a). The family court did not reference the child support guidelines in its Decision and Order.

[16]    Relatedly, under HRS § 580-47(c),

> [n]o order entered under the authority of subsection (a) or entered thereafter revising so much of such an order as provides for the support, maintenance, and education of the children of the parties shall impair the power of the court

(continued. . .)

The family court's decision not to allow Husband to recoup child support overpayments for Daughter was also based, at least in part, on the fact that it would be inequitable if Husband were allowed to do so. This is similar to the family court's reasoning that Husband was estopped from recouping overpayments made for Son's child support. Based on this perceived inequity, the family court concluded that Husband was not entitled to have his child support obligation to Daughter terminated.

The ICA did not address this finding. Similar to the estoppel conclusion of the family court with respect to child support overpayments for Son, it is not clear from the family court's Decision and Order what legal theory was utilized in order to reach the conclusion of inequity. Hence, upon remand, the family court must clearly state the basis for its conclusion of inequity and render sufficient findings of fact in support of that conclusion.

---

(. . .continued)

> from time to time to revise its orders providing for the support, maintenance, and education of the children of the parties upon a showing of a change in the circumstances of either party or any child of the parties since the entry of any prior order relating to the support, maintenance, and education.

HRS § 580-47(c) (2007).

## VII.    Conclusion

Accordingly, the ICA erred in determining that the circuit court abused its discretion in concluding that Husband was precluded from seeking reimbursement for his overpayment of child support for Son.  Instead, for the reasons stated, the ICA should have remanded the case to the family court for a determination of whether Husband was estopped, under laches or other applicable legal principles, from seeking reimbursement for overpaid child support for Son.  Additionally, the ICA erred by failing to address (1) the family court's finding of inequity as to Husband's reimbursement claim for overpaid child support for Daughter and (2) Wife's argument that the family court was authorized under HRS § 580-47(a) to order Husband to continue paying Daughter's child support.  The ICA should have remanded the case in order for the family court (1) to consider in the first instance whether it was appropriate to order child support payments for Daughter after the obligation expired under the 2004 Amendment and (2) as necessary, to clarify the basis for its conclusion of inequity as to reimbursement of Daughter's child support and to render adequate findings of fact to support this conclusion.  For the foregoing reasons, we vacate in part the ICA Judgment on Appeal and affirm to the extent that it vacated the Decision and Order of the family court.  This case

37

is remanded to the family court for further proceedings consistent with this opinion.

| | |
|---|---|
| Francis T. O'Brien<br>for petitioner | /s/ Mark E. Recktenwald |
| | /s/ Paula A. Nakayama |
| Charles T. Kleintop and<br>Dyan M. Medeiros<br>for respondent | /s/ Sabrina S. McKenna |
| | /s/ Richard W. Pollack |
| | /s/ Michael D. Wilson |

