**NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

Electronically Filed
Intermediate Court of Appeals
CAAP-24-0000564
31-MAR-2025
08:16 AM
Dkt. 85 SO

NO. CAAP-24-0000564

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

IN THE INTEREST OF G.B., K.M.

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-S NO. 22-00063)

SUMMARY DISPOSITION ORDER
(By: Leonard, Acting Chief Judge, Nakasone and McCullen, JJ.)

**Mother**-Appellant appeals from the Family Court of the First Circuit's August 8, 2024 order granting Petitioner-Appellee Department of Human Services' (**DHS**) motion to establish a permanent plan (**Permanent Plan Order**).[1]

---

[1] The Honorable Lesley N. Maloian presided.

This case requires a fictitious title following Hawaiʻi Revised Statutes §§ 571-54 (2018) and 571-11 (2018).

The family court's Permanent Plan Order was entitled "Orders Regarding [X] Periodic Review [X] Permanency Hearing [X] Intervenor's Motion to Change [K.M.]'s Foster Placement Filed on January 17, 2024, [X] Intervenor's Motion to Be Granted Intervenor Status Regarding [K.M.]'s Foster Placement Filed on May 6, 2024, [X] DHS's Motion for Immediate Review Filed on May 7, 2024, [X] DHS's Motion to Establish a Permanent Plan Filed on May 14, 2024." (Formatting altered.)

In the Permanent Plan Order, the family court: continued foster custody of Mother's child, K.M.; ordered a permanent plan (**Permanent Plan**) for K.M. with the concurrent goals of reunification with Mother and **Father**-Appellee (collectively, **Parents**) and guardianship to an appropriate caregiver; and directed DHS to file a petition for guardianship of K.M. in a separate proceeding.

On appeal, DHS and Guardian Ad Litem-Appellee Jamie DeMello (**GAL**) (1) challenge this court's jurisdiction, while Mother contends (2) various findings were clearly erroneous, (3) DHS wrongly removed K.M. from her custody, (4) the family court abused its discretion in determining it was in K.M.'s best interest that the resource caregivers be his legal guardians, and (5) the Permanent Plan failed to provide a reasonable period to obtain legal guardianship.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the issues raised and the arguments advanced, we resolve the points of error as discussed below, and affirm.

**(1)** As an initial matter, DHS and the GAL contend this court lacks jurisdiction to review the July 18, 2023 **Order Denying Custody** because the Order Denying Custody was immediately appealable when entered, Mother failed to timely

2

appeal from it and, thus, any challenge to the order was untimely.

In her notice of appeal and points of error, Mother identifies the Permanent Plan Order as the decision challenged. However, in her statement of relief sought, Mother also indicates she seeks reversal of the Order Denying Custody.

As a practical matter, the Permanent Plan Order superseded the Order Denying Custody on the issue of custody. See generally Herrmann v. Herrmann, 138 Hawaiʻi 144, 153 n.9, 378 P.3d 860, 869 n.9 (2016). And we have jurisdiction over this appeal because Mother timely appealed from the Permanent Plan Order.

**(2)** Mother first challenges eighteen findings of fact (**FOF**), of which four - FOF 84 at 42, FOF 85(u) at 50-51, FOF 16 at 53, and FOF 104 at 65 are clearly erroneous.[2]

**(a)** FOF 84 at 42 referred to the GAL as "Lisa Demello[.]" The GAL's name, however, was Jamie DeMello. Mother acknowledges Jamie DeMello was the GAL and does not dispute that

---

[2] We note the family court's FOF numbering restarts on page 52. Thus, page numbers are included after each FOF number for ease of reference.

The remaining FOF challenged are 82 at 38, 85(m) at 49, 85(w) at 50-51, 82 at 63, 83 at 63, 86 at 63, 87 at 63, 102 at 65, 103 at 65, 106 at 66, 120 at 68, 123 at 68, 127 at 68, 128 at 69. Though Mother's opening brief identifies FOF 82 at 38, the language Mother quotes is from FOF 81 at 38. Mother also challenges COL 23, which is actually a finding of fact. These challenged FOF and COL 23 are not clearly erroneous.

Jamie DeMello testified at trial.  Other FOF and COL correctly identify the GAL as Jamie DeMello.

Thus, it appears the reference to "Lisa" DeMello was a typographical error, and does not require this court to vacate the Permanent Plan Order.

**(b)**  FOF 85(u) at 50-51 noted that guardianship to Maternal Aunt would take an additional six months due to monitoring:

> If guardianship is granted to the maternal aunt, it will take an <u>additional six (6) months</u> because [sic] would have to monitor placement to ensure safety and adjustment.  In order to proceed with the guardianship, [sic] continues to need a report from the [Interstate Compact on the Placement of Children (**ICPC**)] in California that the placement is safe[.]

(Emphasis added.)

But DHS Social Worker Sina **Sison** later appeared to provide contradictory cross examination testimony explaining there was no waiting period if guardianship were awarded to Maternal Aunt:

> [Mother's Counsel:] Is it your opinion that . . . the [M]aternal [A]unt can be awarded guardianship today?
>
> [Sison:] No.  Because there's the ICPC process that has to happen.
>
> [Mother's Counsel:] Well, why would the ICPC process be involved if the Court grants guardianship of [K.M.] to [Maternal Aunt] and she becomes the legal guardian?
>
> [Sison:] Well, in that case, yes.

[Mother's Counsel:] Then there would be no waiting period?

[Sison:] <u>There would be no waiting period</u>.

(Emphasis added.)

The family court did not resolve this contradictory testimony. Nonetheless, following the Permanent Plan, the Permanent Plan Order contemplates awarding "legal guardianship [to] appropriate caregivers[,]" including Maternal Aunt and K.M.'s resource caregivers. Thus, any error was harmless.

**(c)** FOF 16 at 53 noted Mother did not retain teaching from services, but FOF 17 at 53 through 49 at 58 clarify that Mother did not participate in services. Thus, FOF 16 at 53 was clearly erroneous. But the error was harmless because Mother does not dispute that she was offered services or that she was unable to demonstrate the skills necessary to address the safety issues that caused K.M. to be placed in foster care.

**(d)** FOF 104 at 65 provided that the "children enjoyed visitation with the maternal family during some holidays and breaks, but did not wish to be permanently placed with the maternal family in California." Mother contends Sison testified K.M. indicated he wanted to live with Maternal Aunt.

The portion of Sison's testimony Mother refers to in her opening brief shows K.M. changed his mind more than once about custody preference:

> [DHS Counsel:] And could you please just kind of express the – from one end to the next, what does [K.M.] express to the Department?
>
> [Sison:] So at the ending of last year when I started asking him, he wants to remain with the current resource caregivers. And at the beginning of the year, after he got back from the trip, he said that he wanted to go with [M]aternal [A]unt. And then later on, maybe March, April, he wanted to remain with the resource caregiver. When I talked to him on Monday, he shared that he wants to go with [M]aternal [A]unt.

Thus, the finding that K.M. "did not wish to be permanently placed with the maternal family in California" was clearly erroneous because K.M. told Sison two days before Sison's trial testimony that he "wants to go with" Maternal Aunt. Notwithstanding this, Hawaiʻi Revised Statutes (**HRS**) chapter 587A does not require a family court to consider a child's preferences when ordering a permanent plan pursuant to a permanency hearing. The only time a family court must obtain a child's consent to a permanent plan is at a termination of parental rights hearing, and only if the child is at least fourteen years old. HRS § 587A-33(a)(4) (2018). Thus, any error was harmless.

**(3)** Mother contends DHS "wrongfully removed [K.M.] from [her] custody on March 13, 2023 because [Father] took [K.M.] from [her]."

On April 29, 2022, the family court ordered that, if Mother was subsequently awarded custody under family supervision, she must keep K.M. and his sister away from Father.

6

On June 30, 2022, K.M. was returned to Mother's custody under family supervision.

On March 13, 2023, K.M. was found wandering Jefferson Elementary School's campus. K.M. reported he "went to the store" with his Parents that morning, Father and K.M. "lost mother[,]" Father and K.M. waited for Mother for an hour, and then Father dropped K.M. off at school, but there was no school because it was spring break. The family court revoked Mother's custody award.

Because Mother violated the court order to keep K.M. away from Father, the family court did not abuse its discretion in revoking Mother's custody award. In re AA, 150 Hawaiʻi 270, 283, 500 P.3d 455, 468 (2021) ("Generally, the family court possesses wide discretion in making its decisions and those decision[s] will not be set aside unless there is a manifest abuse of discretion." (citations omitted)).

**(4)** Mother contends the family court "abused its discretion in finding the resource caregivers as the proposed legal guardians is in [K.M.]'s best interest when [DHS] recommended [Maternal Aunt] . . . ."

Here, DHS generally recommended legal guardianship and identified Maternal Aunt or resource caregivers as appropriate legal guardianship options.

As to Maternal Aunt, the family court found her testimony "was not wholly credible." The family court explained, "[s]pecifically, but not limited to alleged statements made by the subject children regarding their feelings about their current resource caregivers, the subject children's wishes after [older sister] turns eighteen years of age, and discussions had with the subject children regarding court matters."

The family court then decided it was in K.M.'s best interest to remain with the resource caregivers as he "has bonded to his caregivers, the caregivers are bonded to [him], [K.M.] continues to thrive in the care of his current caregivers, [K.M.] is placed with his sibling and [he] is able to maintain his family connections to his [P]arents."

Based on the family court's credibility and best interest determinations, we cannot say there was an abuse of discretion. In re Doe, 95 Hawaiʻi 183, 190, 20 P.3d 616, 623 (2001) ("It is well-settled that an appellate court will not pass upon issues dependent upon the credibility of witnesses and the weight of the evidence; this is the province of the trier of fact." (cleaned up)).

**(5)** Finally, Mother contends the "permanent plan was not amended to reflect a reasonable period to obtain legal guardianship."

HRS § 587A-32(a)(2) (2018) requires the permanent plan "[e]stablish a reasonable period of time by which the adoption or legal guardianship shall be finalized[.]"

In this case, the Permanent Plan was dated May 8, 2024, identified as an initial plan, and filed with the motion to establish a permanent plan on May 13, 2024. The Permanent Plan set a target date of being "[r]eferred for legal guardianship by May 2024." (Emphasis omitted.) And DHS recommended the family court order a permanent plan "with the goal of legal guardianship with appropriate caregivers." But the Permanent Plan did not establish a reasonable period within which legal guardianship would be finalized.

The family court granted the motion to establish a permanent plan and ordered the projected date for reunification or legal guardianship be "within [the] next 6 months[,]" and set a return on the legal guardianship petitions for September 24, 2024. (Emphasis omitted.) Thus, although the Permanent Plan did not establish a reasonable period when legal guardianship would be finalized, the Permanent Plan Order did. And the

9

May 8, 2024 Permanent Plan was made part of the family court's order.

Based on the foregoing, we affirm the family court's August 8, 2024 Permanent Plan Order.

DATED:  Honolulu, Hawaiʻi, March 31, 2025.

On the briefs:                          /s/ Katherine G. Leonard
                                        Acting Chief Judge
Herbert Y. Hamada,
for Mother-Appellant.                   /s/ Karen T. Nakasone
                                        Associate Judge
Jonathan M. Fujiyama,
Julio C. Herrera,                       /s/ Sonja M.P. McCullen
Deputy Attorneys General,               Associate Judge
for Petitioner-Appellee,
Department of Human Services.

Jamie L. DeMello,
Guardian Ad Litem.